# Smoot *v.* The Mobile & Montgomery Railway Company.

*Action by Employee against Railway Company for Damages for Personal injury.*

1. *General charge on the evidence, when proper.*—A general charge on the evidence is proper, and should be given on request, whenever the court would sustain a demurrer to the evidence, if interposed by the party requesting the charge; but when the evidence is conflicting, or circumstantial, or when a material fact rests wholly in inference, such a charge cannot be sustained.

2. *Master; when responsible to servant for personal injuries.*—For injuries proceeding from the personal fault, or negligence of the master, he is under the same liability to his servant as to third persons, towards whom he sustains no special relation; but he is not liable for injuries caused by the negligence, or

fault of other servants in the same employment, which are the risks incident to the common employment, and which each servant is presumed to contemplate when he enters the service.

3. *Same; what care he must use in furnishing materials to servant.*—The master is bound to use ordinary care— such care as men of ordinary prudence exercise under like circumstances for their own protection, in the selection of careful and skillful servants, and in furnishing fit and safe materials, and appliances or machinery necessary and proper for the service, and for injuries arising from a breach of this duty in either particular, he is liable to a servant, but he is not to be understood as insuring, or warranting the safety, or fitness of the materials furnished, nor the diligence and competency of the other servants in the performance of their respective duties.

4. *Employee; when may recover damages sustained by reason of defective materials, &c.*—While a passenger may recover damages from a railroad company on a presumption of negligence, whenever injuries are received because of unfit instrumentalities employed in his transportation, a servant or employee of the company can not recover without proof of negligence, either in the selection of instrumentalities originally defective and unsafe, or in the use of unsafe instrumentalities after knowledge of their defective condition ; and such knowledge on the part of a fellow servant is not sufficient to charge the company with notice of the defect.

5. *Cars and locomotives, duty of railroad companies as to inspecting.*—It is the duty of a railroad company to exercise ordinary care for the inspection of its locomotives and cars, and to p.event the use of those which are unsafe or unfit for use ; but a system of inspection which would embarrass the operation of the road cannot be required.

APPEAL from the City Court of Mobile.

Tried before Hon. O. J. SEMMES.

This was an action brought by the apppellee against the appellant, to recover damages for personal injuries sustained by him while acting as " brakesman," on the appellant's road. On the trial it appeared that on the 14th of October, 1876, plaintiff was employed as a " brakesman " on a train of freight cars going to Mobile, from Montgomery, over the defendant's railroad. When the train reached Greenville, seven loaded cars were attached to the train, from a number of cars which were standing there to be carried over the road. There was no car inspector at Greenville, but there was one at Pensacola Junction, a station which the train passed on the trip to Mobile. When the train reached Bay Minette, plaintiff undertook, being ordered to do so by the conductor of his train, to couple on more cars to those taken on at Greenville. In doing so he saw that the bumper on a car taken on at Greenville, and which he was attempting to couple on to a car to be taken on to Bay Minette, hung down lower than it should do, and putting his hand under it to raise it up, so as to make it meet the other bumper, the bumper which he was handling was driven in, and his hand was caught and folded through the iron strap which supported the bumper, and was severely crushed, his body was bruised so badly that the injury produced hernia ; his hand was completely disabled; he was confined to his bed for a long time. The iron strap

which supported the bumper was worn and broken, and there was no bolt in the bumper which would move backward, but would not spring forward. Plaintiff, however, testified that he did not know this until after he was hurt, the break in the bumper being under it where he could not see it without getting down and looking up. Walker, another "brakesman" on the same train, testified that when he saw appellee going to couple this car, he called out to him "look out," telling him that the bumper was broken. Plaintiff testified that he did not hear Walker call out to him. The same witness testified that he coupled up the same car at Greenville and knew that the bumper was broken, for that was the only thing which could make it hang down as it did. He also testified that it was the duty of the station agent at Greenville, to examine the cars at Greenville before loading them, and not to load a car which was in bad order; that it was his duty as "brakesman" to tell the conductor that the car was in bad order, but he did not do so ; that it was also his duty to inform any other "brakesman," who was about to couple this car, that it was dangerous to do so, and that he did call out to plaintiff; and it was the duty of the car inspector to have the cars which were in bad order, taken from the train, and sent to the shops for repairs. The plaintiff asked the court to charge the jury, that "if the jury believe from the evidence, that although the employees of the company were negligent, and that Smoot did not contribute thereto, yet if the company did not exercise due care and diligence to know the condition of the car, the plaintiff would be entitled to recover." This charge the court gave, and the defendant excepted. The defendant asked the court to charge the jury, that " if they believed the evidence, they must find for the defendant." This charge the court refused to give, and the defendant excepted. There was a verdict for the plaintiff for $10,000. The ruling of the court in giving and refusing the charges set out above are assigned as error.

G. L. SMITH, for appellant.—An employee can not recover for an injury occurring by the negligence of his co-employee. M. & M. R'way Co. v. Smith, 59 Ala. 245 ; Scott v. Parham, 24 Ala. 36. Walker, the co-employee of appellant, knew that the bumper was broken, and he testified that it was his duty to tell the conductor of the train of this fact, but he did not do so ; if he had done so there would have been no injury inflicted on appellant at Bay Minette. If the station agent at Greenville had discharged the duty imposed, i. e. not to load cars that were in bad order, the appellant would not have been injured. If the car inspector at Pensacola Junc-

tion had performed his duty, no accident would have happened. It thus appears that the company exercised great care to protect its employees from injury by reason of defective cars. In addition to this, it was the duty of appellant to have examined the coupling himself, and failing to do so, his own negligence contributed directly to produce the injury.

JOHN A. CUTHBERT, and J. W. A. SANFORD, for appellee.—There should have been a car inspector at Greenville ; the station agent there was not shown to have been skilled in the construction of cars, or competent for the duty of examining them—the presumption indeed being to the contrary. It was the duty of the railroad company to procure suitable instrumentalities for conducting its business, and keep them in good condition. A failure to do this is negligence, and if an injury result to an employee therefrom, the company is liable in damages.—*Patterson v. Pitts & C. R. R. Co.*, 76 Pa. St. 389 ; *Chicago & N. W. R. R. Co. v. Taylor*, 18 Am. R. 626. The injury to appellant was caused by the defective bumper, the condition of which could have been ascertained by the use of ordinary diligence. While this car was being used for the transportation of freight, the appellant was injured, and for this injury the railroad company is liable in damages. *Ill. Cent. R. R. Co. v. Welch*, 52 Ill. 183 ; *Lalor v. Chicago, Burlington & Quincy R. R. Co.* 4 Am. R. 616 ; *Gibson v. Pacific R. R. Co.* 46 Mo. 163 ; *Heegan v. Western R. R. Co.* 4 Selden, 115 ; *Snow v. Housatonic R. R. Co.* 8 Allen, 444.

BRICKELL, C. J.—The instruction to the jury, given at the request of the appellee, to which an exception was reserved, is loosely worded, and confused. Interpreting it as we suppose it was intended the jury should interpret it, we understand it as affirming that, though the injuries of which the appellee complains were the result of the negligence of his fellow-servants, yet the appellant is liable in damages for such injuries, if it did not exercise due care and diligence to know the condition of the car, from the defects, or rather the impaired condition of which the injuries proceeded. We do not propose to consider this instruction particularly, because we reach the conclusion, that the City Court erred in refusing, on the request of the appellant, to instruct the jury that, under the evidence, the appellee was not entitled to recover. Such an instruction cannot be supported, when the evidence is conflicting, or when the evidence is circumstantial, or when a material fact rests wholly in inference. It may be given, and should on request be given, whenever the court would

[Smoot v. Mobile & Montgomery Railway Co.]

sustain a demurrer to the evidence, interposed by the party requesting the instruction.—1 Brick. Dig. 335, §§ 1-4.

The legal propositions the case involves, are not matter of doubt, or uncertainty, but are well defined and well settled by a long line of decisions, and have been often in this court the subject of consideration. A master is under the same liability to his servant, for injuries proceeding from his negligence, that he is to third persons to whom he sustains no special relation. So, a liability rests upon him, whenever his personal fault contributes directly to cause the injury, though concurring with it, there may have been the negligence of a servant engaged in the same common employment. In *Roberts v. Smith*, 2 Hurls. & Nor. 212, a scaffolding was erected under the immediate supervision of the master, who would not permit the use of some safe and strong scantlings, directing the use of others, weak and not safe, in consequence of which the scaffolding fell, and a servant was injured; the master, because of his presence, personal interference, and negligence, was held liable. So, in the case of *Noyes v. Smith*, 28 Vt. 59, the personal fault of the master was in the careless selection of a locomotive, which was unsafe and dangerous, from the explosion of which the engineer, to whom its unfitness was unknown, was injured; the want of proper care and diligence rendered the master liable to the engineer. It is, however, the *negligence of the master*, for which liability to a servant can be visited upon him, for the rule is settled, that he cannot be made liable for injuries proceeding from other servants in the same employment. Injuries, resulting from such cause, are of the risks incident to the employment, which it is intended the servant contemplates, and consents to incur, when he enters the service. There is also, a higher reason for relieving the master from liability for such injuries, founded in the policy of encouraging and compelling the servant to exercise diligence and caution in the discharge of his duties, which, while protecting him, affords protection also to the master; such diligence being properly esteemed a better security against injury from the negligence of a fellow-servant, than recourse against the master for damages, when the injury has been received.—Cooley on Torts, 541.

It is, however, a duty resting upon the master, to use ordinary care—the care which men of common or ordinary prudence exercise under like circumstances for their own protection—in the employment of careful and skillful servants, and not to continue in his service such as are known to be wanting in either reasonable skill or diligence. This duty is not now involved, for it is not insisted that there was any want of prudence in the employment of any of the fellow-servants of

the appellee, or any want of skill or care on their part.   Another duty of the same kind, which it is supposed the appellant did not observe (and upon that supposition the present action has been prosecuted), is the use of ordinary care or diligence in furnishing safe and fit materials, appliances, and, when that is employed, machinery, for the service in which the servant is engaged.   This, however, is not an *absolute duty.* The master must not be understood as *insuring,* or *warranting,* the safety or fitness of the materials or appliances furnished, more than he can be regarded as promising, absolutely and unconditionally, that the fellow-servants are competent and diligent.   The duty resting upon him is to exercise *due care and diligence,* as we have defined it—the care and diligence which a man of ordinary prudence, engaged in a like business, would exercise for his own protection, and the protection of his property.   When this is exercised, the duty to the servant is satisfied ; for there is no obligation resting upon the master, to be more careful for the safety of the servant, than for his own security.—*Mobile & Ohio R. R. Co. v. Thomas,* 42 Ala. 672, 719.   Accidents, from which personal injury may result, proceeding from defects originally existing in such appliances, or which result from their use, are, like the negligence of fellow-servants, of the incidental hazards of the service, to which the servant must have contemplated he would be exposed.—*Mobile & Ohio R. R. Co. v. Thomas, supra; Searle v. Lindsay,* 11 Com. Bench (N. S.), 429 ; *Wonder v. Balt. & Ohio R. R. Co.,* 32 Md. 411 ; *Greenleaf v. Ill. Cent. R. R. Co.,* 29 Iowa, 14 ; *Hard v. Vermont & Canada R. R. Co.,* 32 Vt. 473.   When such appliances have been furnished—when diligence has been observed in procuring them, the use of them is necessarily intrusted to the servants of a railroad company, as is their care and inspection, and the repair of them, and determining when the use must be abandoned, until repairs are made.   This duty may be intrusted to those operating the appliances, or confided to other servants having no other duty than that of inspection or of repair.   However this may be, the several servants are in the same circle of employment—derive duty and compensation from the same source, and are laboring for a common purpose.   They are fellow-servants, and the master cannot be made answerable to the one, for the negligence of the other.   The machinist in the shop, whose duty it was to repair locomotives, and the supervisor of track, whose duty it was to keep the road bed in proper and safe condition, have each been determined fellow-servants of the fireman on the locomotive, for whose negligence the master could not be made liable.—*Mobile &*

*Ohio R. R. Co. v. Thomas, supra;· Mobile & Montgomery R. Co. v. Smith,* 59 Ala. 245.

If, therefore, the coupling or bumper of the car, causing the injuries of which the appellee complains, or the use of the car in its defective condition, was the result of the neglect or want of care of a fellow-servant—of the station agent at Greenville—the conductor of the train, the fellow-brakeman or the car inspector at Pollard Junction, each and all of whom being engaged in the same common service, and the same general business, the appellant cannot be made liable, unless negligence can be imputed to it, concurring with their negligence. The burthen of proving such negligence rests upon the appellee. It is the indispensable element of his right of recovery—the very *gravamen* of his complaint. Inferences of it cannot be drawn from the fact of injury, and from the unfit and unsafe condition of the car. This is the established doctrine, distinguishing the case of a servant, claiming damages for injuries resulting from negligence, and passengers, who can recover upon a presumption of negligence, whenever injuries are received because of unfit instrumentalities employed in their transportation.—*Mobile & Ohio R. R. Co. v. Thomas, supra.*

In this case, there is a want of evidence that the car was originally unsafe. The unfitness and danger imputed to it, was the result of breaking of parts of it, in the use. When it became broken, and, in consequence, unsafe and unfit for use, or how long it had been in that condition, is not shown. But that it was accidentally in this condition, on the road, between its terminating points, in use for transporting freight at a time and place, when and where, the appellant could not be reasonably expected to have knowledge of its condition, is apparent. True, the witness Walker speaks of it as *not safe,* and the caution he observed in the use of cars having a coupling of the like kind. But, it is apparent he was speaking of it, only as compared with other cars, having a coupling of different construction, and as less safe than such cars ; not as unfit or unsafe for use absolutely. The master is not bound to supply the servant with the most approved and the safest appliances. Such as are safe and fit, not exposing the servant to greater perils than are usually incident to the service, is the measure of duty.—Whart. Neg. § 213 ; *Mobile & Ohio R. R. Co. v. Thomas, supra.*

The negligence of the appellant is supposed to consist in a want of ordinary care to know the condition of the car. Knowledge of its condition is not imputed, but ignorance is alleged to have been culpable, because the result of negligence. Turning to the case in that view, we repeat, the bur-

then of proof rests upon the appellee. We look in vain for the slightest evidence that any of its officers or agents, for whose negligence the appellant would be responsible, until after the accident by which the appellee was injured, had knowledge of the defective condition of the car, or of any fact which ought to have put them on inquiry. Knowledge of the defective condition of the car, a want of prudence in its use, is traceable only to *fellow-servants* of the appellee, whose care and diligence he is presumed to have consented to risk; whatever of guards against the use of defective cars were reasonable, so far as the evidence shows, and to which it could justly be expected the appellant would resort, were adopted. The station agent at Greenville was in duty bound not to load, or suffer loaded, unfit cars. The car inspector at Pollard Junction was bound not to permit unfit cars to pass his station. The brakemen were under the duty of examining the car-wheels and couplings and reporting to the conductor whenever either was found unsafe, or in any respect unfit. Engaged in running a long line of railroad, while it was the duty of the appellant to exercise ordinary care for the inspection of its cars, and for the prevention of the use of such as were unsafe, or in any respect unfit, a system of inspection which would embarrass its operations cannot be required. It would, it may be, have been a higher degree of care, to have caused an inspection of cars at every station, and thereby greater security against accidents would have been afforded. That would be a degree of care, a servant has no right to expect or demand.

When the master provides machinery in itself safe, or exercises ordinary care in providing it, and exercises the same care to keep it in that condition, if he were held to answer for the negligence of the servants whose duty it is to use it, to inspect it, and to use it only when safe, and to give him notice when it becomes unsafe, the rule relieving him from liability for servants upon whose fidelity he is compelled to rely, would be practically abrogated.

The essential fault—the negligence of the appellant, for which alone there is liability to the appellee—was not shown; nor was there evidence tending to show it. The injuries received by him were accidental, the incidents of the service in which he engaged voluntarily; or, if mixed with negligence on the part of others, it was the negligence of his fellow-servants. The City Court erred in refusing to charge that the evidence did not authorize him to recover.

But, independent of this view, the evidence is undisputed, that it was part of the duty of the appellee to look after the coupling of the car; and that, if with proper care he had

[Finnegan v. Frank.]

performed the duty, he would have known the defective condition of this coupling. Having knowledge of its condition, and exercising the care and prudence which was necessary in using the coupling in its condition, he could have avoided injury from it, as did his fellow-servant, Walker. His failure to examine the coupling, or, if he examined, his failure to employ the care and diligence in its use required by its condition, contributed to produce the injury of which he complains. The principle, that a person who, by his own negligence, exposes himself to injury, cannot recover damages for the injury, applies to the relation of master and servant; and the servant cannot recover of the master, for injuries to which his own negligence directly contributed.—Cooley on Torts, 563; Whart. Neg. § 244; *M. & L. E. R. R. Co. v. Barber,* 5 Ohio St. 541; *V. & M. R. R. Co. v. Wilkins,* 47 Miss. 404.

Without considering other questions, the judgment is reversed, and the cause remanded.